IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| REGINA CEDERBERG and BEAU CEDERBERG, | Case No. 3:17-cv-1552-AA<br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| NW PRIORITY CU, BRAD ABRAMS, SARAH MUFFENBIER, and "DOE" LENDER, | |
| Defendants. | |

AIKEN, District Judge:

Defendants, Northwest Priority Credit Union ("NWPCU"), Brad Abrams, and Sarah Muffenbier, move to dismiss plaintiffs Regina Cederberg and Beau Cederberg's first amended complaint ("FAC"). (doc. 11). For the reasons discussed below, defendants' Motion is GRANTED IN PART, and DENIED IN PART.

## BACKGROUND

The facts are drawn from plaintiffs' FAC; they are accepted as true and construed in the light most favorable to plaintiffs for purposes of this motion. *Skilstaf, Inc. v. CVS Caremark*

*Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). Plaintiffs are a married couple who were pregnant in August 2015, when Ms. Cederberg first contacted defendant seeking a loan to purchase a home in Warrenton, Oregon. Ms. Cederberg discussed the loan process with NWPCU loan officer Brad Abrams. She informed him that she was pregnant and would soon be on maternity leave. Ms. Cederberg alleges that Abrams told her that if she took maternity leave her income from her employment would not be considered as a part of her loan application until she had been back at work for 30 days.[1]

When Ms. Cederberg's next contacted Abrams, she alleges that she informed "him that refusing to allow her to apply for [a] loan because she was on maternity leave was a violation of the law." FAC. at ¶ 14. Abrams then sent Ms. Cederberg a loan application and a list of documents that would be required by a lender.

Following this interaction, defendant Sarah Muffenbier took over Ms. Cederberg's case and ultimately processed her application. NWPCU submitted Ms. Cederberg's application for approval, but the application was allegedly denied based on Ms. Cederberg's insufficient credit scores. Muffenbier informed plaintiff that she needed a score of 620 to qualify for the loan. Plaintiff alleges that the report upon which Muffenbier relied was not directly from any credit reporting bureau. Rather, NWPCU obtained a credit report from a service that pulls reports from all three credit reporting agencies ("CRAs") and compiles them into one report. Def. Mot. Dismiss at 3. Muffenbier relayed that Ms. Cederberg's score from all three CRAs was below the 620 score required for loan for which Ms. Cederberg was applying.

---

[1] Defendant maintains that plaintiff pregnancy was only generally discussed, and that she was given options for applying for a loan, including applying for the loan prior to her departure on leave, or waiting until she returned

Page 2 – OPINION AND ORDER

Ms. Cederberg alleges that she disputed that her credit score was too low and provided credit reports to Muffenbeir that were directly from the two of the credit reporting bureaus. These reports purportedly showed that Ms. Cederberg had a credit score over 620. Muffenbier informed Ms. Cederberg that she had to use the scores provided by her broker when reviewing Ms. Cederberg's loan application. Ms. Cederberg's application was ultimately denied on or about October 2, 2015. Plaintiffs were ultimately pre-approved for a home loan from another lender following the final denial by defendant.

On September 29, 2017, plaintiffs filed a complaint before this Court alleging: (1) violations of the Fair Housing Act, Title VIII of the Civil Rights Act, 42 U.S.C. § 3061, 3067 ("FHA"); (2) violations of Oregon's Unlawful Discrimination in Real Property Transactions Act, O.R.S. 659A.421 ("UDRPTA"); and (3) negligence. On December 8, 2017, with leave from the Court, plaintiffs filed their FAC, clarifying their discrimination claims and removing their negligence claim. On December 22, 2017, NWPCU filed the present motion to dismiss, with prejudice, pursuant Fed R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if assumed to be true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff." *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013). The factual allegations in the complaint must present more than "the

mere possibility of misconduct," *id.* at 679, and more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendants argue that the FAC is conclusory and lacks factual support and that plaintiffs are unable to establish the requisite elements of their claims. Additionally, defendants assert that Beau Cederberg's claim should be dismissed on the grounds that he is not a member of a protected class and that he had no interaction with defendants. I address each argument in turn.

I. *§ 3605 FHA Claim*

Under the FHA, it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605. Thus, to state a claim under the FHA, "the plaintiffs must plead that (1) they were a member of a protected class; (2) they attempted to engage in a 'real estate-related transaction' with [the defendants], and met all relevant qualifications for doing so; (3) [the defendants] refused to transact business with the plaintiffs despite their qualifications; and (4) the defendants continued to engage in that type of transaction with other parties with similar qualifications." *Bojorquez v. Wells Fargo Bank, NA*, 2013 WL 6055258, at 9–10 (D. Or. Nov. 7, 2013) (citing *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir.1994)).

Here, plaintiffs have pled that Ms. Cederberg was a member of a protected class, namely that she was pregnant woman and preparing to take maternity leave. Further, they allege that she attempted to engage in a 'real estate-related transaction' with the defendants, and met all of the relevant qualifications to do so. The complaint also states that defendants denied Ms.

Page 4 – OPINION AND ORDER

Cederberg's application for a home loan despite her qualifications. The only facts that the plaintiff do not specifically allege are whether she was truly qualified for the loan she sought and if defendant continued to engage in that type of transaction with other parties with similar qualifications.[2]

First, plaintiffs do assert in the FAC that the defendant told her that she needed a credit score above 620 to qualify for a home loan. When she produced credit reports from two CRAs showing that she had a credit score above 620, she alleges that defendants refused to consider these reports and instead relied on the report of a third-party credit score broker. Further, I decline to adopt defendants' argument that at this stage of the litigation plaintiffs must specifically identify similarly qualified non-pregnant applicants who were given loans. Although potentially important at summary judgment or trial, such specificity is not required in the complaint at the pleading stage, and plaintiffs' allegations are sufficient to survive a motion to dismiss.

Here, Ms. Cederberg meets the FHA pleading standard by alleging that defendant discriminated against her on the basis of sex by denying them a home loan for which they were qualified and that similarly situated non-pregnant applicants were approved. Thus, plaintiffs have "give[n] the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests," and need not "adduce a prima facie claim in the complaint itself—before discovery, often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action, has taken place." *Egbukichi v. Wells Fargo Bank,*

---

[2] Plaintiffs do assert in the FAC that the defendant told her that she needed a credit score above 620 to qualify for a home loan. When she produced credit reports from two CRAs showing that she had a credit score above 620, defendants refused to consider these reports and instead relied on the report of a third-party credit score broker.

Page 5 – OPINION AND ORDER

*NA*, 2017 WL 1199737, at 4 (D. Or. 2017) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).

Therefore, taking all of plaintiffs allegations as true, it is appropriate to allow the § 3605 claim to move forward at this point in the proceedings. Defendant may raise these again in a properly supported motion for summary judgment.

II. *§ 3617 FHA Claim*

Plaintiffs also allege that defendants "unlawfully retaliate[ed] and interfer[ed]" with plaintiffs' "fair housing rights" in violation of 42 U.S.C. § 3617 by denying Ms. Cederberg's loan application "even though she had a sufficient credit score to qualify for a loan." FAC ¶ 34. Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of [...] any right granted or protected by section 3605" of the FHA.

Defendants assert that the plaintiffs are barred from bringing a § 3617 claim because they have failed to satisfy the requisite elements of a § 3605 claim, making this claim moot. However, as noted above, I find that the plaintiffs in this case have pled sufficient facts to sustain that claim at this time. Therefore, the only issue to consider is whether plaintiff has alleged facts that would constitute "coerc[ion], intimidat[ion], threat[s], or interfere[nce] with any person in the exercise or enjoyment of [...] any right granted or protected by section 3605 [...] of [the FHA]." 42 U.S.C. § 3617.

I find that plaintiff has failed to allege any facts that would constitute such unlawful conduct on the part of defendants NWPCU, Sarah Muffenbier, or Brad Abrams. Initially, I note that there are no allegations that defendants coerced, intimidated or threatened plaintiffs. Rather, the sole basis for plaintiff's claim under Section 3617 of the FHA is that defendants denied "plaintiffs' application even though [Regina Cederberg] had a sufficient credit score to qualify

Page 6 – OPINION AND ORDER

for a loan." FAC ¶34(a). Mere denial of a loan application, even when made on a basis that is unlawful under Section 3605 of the FHA, does not constitute a violation of Section 3617, particularly the allegation by plaintiffs that defendants "retaliate[ed] against and interfere[ed] with plaintiffs in their exercise of their fair housing rights." *Id.* Interference has been held to be "the act of meddling in or hampering an activity or process." *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir 2001). There is no conduct of the defendants alleged by plaintiffs that would constitute interference, as they simply denied Ms. Cederberg's loan application; defendants did not interfere with the plaintiffs' ability to obtain a loan from another source. Likewise, there is no allegation of retaliation by defendants against plaintiff, only a conclusory statement of the elements of a violation of Section 3617.

Plaintiff cites to the Department of Housing and Urban Development regulations, arguing that conduct prohibited § 3617 includes "s "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(6). As defendant correctly notes, there are no allegations that discriminatory housing practices were reported to a housing provider or other authority. Ms. Cederberg only alleges that she told Abrams that she felt statements he made were incorrect under the FHA. Moreover, there is no specific allegation that the loan was denied in retaliation for the communication with Abrams. For the above reasons, I grant the dismissal of plaintiffs' § 3617 claim.

III. *Claims of Beau Cederberg*

Defendants assert that Mr. Cederberg's claims should be dismissed on the grounds that he is not a member of a protected class, did not apply for a loan from NWPCU, did not have any contact with any of the defendants, and was not denied a loan from NWPCU. While it is true that the Ninth Circuit has held that, "under the FHA the plaintiff need not allege that he or she

was a victim of discrimination," defendants are correct that § 3605 requires an aggrieved party to have suffered a "distinct, palpable" harm when making a claim. *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999).[3] Mr. Cederberg has not claimed a distinct, palpable harm against himself, and so his claim of indirect discrimination under the FHA fails.

In this case, the protected class in question is that of a mother taking maternity leave. Beau Cederberg, while married to the person who is taking maternity leave, was not taking maternity leave himself; thus his claim fails to meet the first element of a Section 3605 claim. The facts in the complaint deal with Ms. Cederberg's application and rejection for a home loan. Mr. Cederberg did not attempt to engage in a real estate-related transaction with the defendants; thus his claim fails to meet elements two and three of a Section 3605 claim, and we cannot know if element four was met, as Mr. Cederberg did not engage, nor did he attempt to engage, in any transaction with the Defendants. Mr. Cederberg was neither an applicant for the loan nor a purchaser of the property. NWPCU had no communications or contact whatsoever with Mr. Cederberg, and no such contact is alleged in the complaint. Accordingly, I grant defendants' motion to dismiss the claims of plaintiff Beau Cederberg.

IV.   *Plaintiff's State Claims*

Defendants have also objected to plaintiff's asserted claims under Oregon's counterpart to the FHA. State law claims in this District are analyzed in a manner identical to Fair Housing Act claims. *Colquitt*, 2016 WL 1276095 at 3. Therefore, plaintiff's state law claims are dismissed for the same reasons her dismissed FHA claims, as articulated above.

///

---

[3] "While members of minority groups were damaged the most from discrimination in housing practices, the proponents of the legislation emphasized that those who were not the direct object of discrimination had an interest in ensuring fair housing, as they too suffered." *Tafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S.Ct. 364 (1972).

V. *Dismissal With or Without Prejudice*

Upon dismissal pursuant to Fed.R.Civ.P. 12(b)(6), the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (citations and internal quotations omitted). Where a party repeatedly fails to cure deficiencies, however, the court may order dismissal with prejudice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261–63 (9th Cir.), *cert. denied*, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992).

Defendants assert that, because plaintiffs' claims fail at the pleadings level and they have previously been granted leave to amend, dismissal with prejudice is proper. However, the previous Motion to Amend (doc. 8) was unopposed. Further, it is unclear at this stage whether plaintiffs' claims "could not be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127. Accordingly, the claims of Beau Cederberg and Ms. Cederberg's § 3617 claims are dismissed, without prejudice.

## CONCLUSION

Defendant's Motion to Dismiss (doc. 11) is DENIED in part and GRANTED in part. Plaintiffs are granted leave to seek amendment of their claims within 21 days of this order.

IT IS SO ORDERED.

Dated this 27 day of March 2018.

_____
Ann Aiken
United States District Judge